For the reasons I have stated, I am of the opinion that the judgment appealed from should be reversed.

I am authorized to say that Judge Hatfield concurs in the views herein expressed.

LUNHAM & REEVE, INC. *v.* UNITED STATES (No. 4310) [1]

United States Court of Customs and Patent Appeals, November 8, 1940

*Jordan & Klingaman* (*J. L. Klingaman*, of counsel) for appellant.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney, of counsel), for the United States.

[Oral argument October 4, 1940, by Mr. J. L. Klingaman and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Appellant brought suit against the United States in the United States Customs Court to recover certain moneys paid as customs duties alleged to have been improperly exacted because of the classification by the Collector of Customs of the port of New York of an importation of zinc coils, in strip or ribbon form, 0.75 of an inch in width, 0.008 of an inch in thickness, and about 125 meters in length.

The merchandise was classified and assessed for duty at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, which reads as follows:

PAR. 397. *Articles or wares not specially provided for*, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; *if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal*, but not plated with platinum, gold, or silver, or colored with gold lacquer, *whether partly or wholly manufactured, 45 per centum ad valorem.* [Italics ours.]

---

[1] C. A. D. 153.

Appellant protested against the classification claiming the merchandise to be properly dutiable under paragraph 1558 of the said act. Other claims were made in the protest and were in effect abandoned. Paragraph 1558 reads as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and *on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 percentum ad valorem.* [Italics ours.]

The trial was held in the city of New York before the second division of said court, and the entire record consisted of two illustrative exhibits and the testimony of but one witness for appellant who was not cross-examined by counsel for the government. The testimony has been fairly epitomized by the trial court as follows:

The said witness testified that he was factory manager for H. L. Judd & Co., fabricators of metal products, at Hartford, Conn.; that he was familiar with the merchandise invoiced herein as "electrolytic ribbon zinc" and represented by Illustrative Exhibit 1; that in his factory this ribbon material is fed into an automatic machine which manufactures beams longitudinally; that the material has marks where nails are supposed to go; that it is cut off in lengths of approximately four yards, as represented by Illustrative Exhibit A; that, among other things, articles made out of material like Illustrative Exhibit 1 are stair plates and step nosings; that he had seen zinc in strips similar to Illustrative Exhibit 1 produced in rolling mills in this country; that zinc in the form of slabs is annealed, scraped, and drawn until it reaches the condition of a ribbon or strip of the specific width and gauge ordered by the customer; that in this condition it is sold as raw material; that among other articles made from such strips are shoe eyelets, insulated ribbons that go under the window for radio connections, and for many other purposes.

Upon this record, findings were made as follows:

1. That the merchandise at bar consists of strips of zinc imported in coils.
2. That after importation it is treated and finished for use as material for binding linoleum, for making shoe eyelets, insulated ribbons for radio connections, and for many other purposes.
3. That in its imported condition it is not dedicated to any particular use.

On the basis of these findings, the trial court, after reviewing several decisions of this court, held that:

The claim in the present case calls for unenumerated manufactured *articles*, whereas the involved merchandise was classified under a provision for *articles* composed in chief value of zinc. The latter is certainly the more specific for the merchandise, and we so hold.

and rendered judgment overruling the protest. From the judgment this appeal was taken.

The issue is whether or not the merchandise consists of articles "partly or wholly manufactured" within the meaning of paragraph 397, *supra.*

The appellant contends that the term "articles" in paragraph 397 is used in a limited sense. In its brief it is stated that:

\* \* \* Generally speaking, a commodity comes within a provision for partly manufactured articles when it has been processed to such an extent that an inspection of it reveals the article which it will ultimately become, that it has a sole use, and that its utility for other purposes has been destroyed.

In support of this contention many cases of this court were cited. In view of our conclusion it is not necessary to list them here.

The government contends that the word "articles" as used in paragraph 397, *supra*, is not limited, as urged by appellant, but that it embraces merchandise composed in chief value of any of the metals named in said paragraph even though not dedicated to any one particular use.

If there be any merit in the contention of appellant it must be on a theory that the rule for determining what is an article partly manufactured, under the nonenumerated articles paragraph, 1558, is different from that determining what is a partly manufactured article under paragraph 397.

It will be observed that the only substantial difference in language between the pertinent provisions of the competing paragraphs is that in paragraph 397 the articles must be "composed wholly or in chief value of \* \* \* zinc \* \* \*." If the word "zinc" were not present in paragraph 397, the merchandise, on the record here, would probably be dutiable as claimed by appellant. It is not claimed that the zinc strips are not articles partly manufactured, even though they are to be further manufactured into various other things. There is no competition here between "articles" and "manufactures." Since there is no question but that the merchandise consists of partly manufactured articles, we fail to see, on this record, why there should be a different rule applied in the construction of the word "articles" as it appears in the competing paragraphs simply because in paragraph 397 when articles are composed wholly or in chief value of the metals named therein they are subject to higher rates of duty than those provided for in paragraph 1558 for articles manufactured wholly or in part, not specially provided for.

The contention of appellant, if correct with respect to the involved merchandise, would likewise be correct as applied to articles or wares of the precious metals as set out in paragraph 397. In other words, if the imported zinc strips were plated with platinum, gold, or silver, or if the strips were wholly or in chief value composed of precious metal, and were not specifically provided for elsewhere in the tariff act, they would be classifiable under paragraph 1558. This, in our opinion, would lead to an absurd consequence, and would be obviously inconsistent with the legislative purpose.

It is a well-established general principle of law, as stated in *United States* v. *Ryan*, 284 U. S. 167, 175, that:

All laws are to be given a sensible construction. A literal application of a statute which would lead to absurd consequences is to be avoided whenever a reasonable

application can be given which is consistent with the legislative purpose. [citing cases]

In the case of *Hensel* v. *United States*, 3 Ct. Cust. Appls. 117, 119, T. D. 32366, this court declared that:

It is a fundamental and well-established principle of statutory construction that absurd and ridiculous results must be avoided where the language of a statute will permit.

It would unnecessarily extend this opinion to discuss the cases cited by appellant. They have received our careful consideration but in our opinion they do not support appellant's contention, particularly in view of what was said by this court in the recent case of *D. C. Andrews & Co.* v. *United States*, 25 C. C. P. A. (Customs) 437, T. D. 49507. In that case the imported merchandise was a nickel catalyst composed of nickel, sulphide, nickel oxide, metallic nickel, palm oil and kieselguhr (infusorial earth). It was classified by the collector under paragraph 397, *supra*, as an article composed in chief value of nickel and held dutiable at the rate of 45 per centum ad valorem. The importer claimed the merchandise to be properly classifiable as a combination or mixture of chemical elements or chemical compounds at 25 per centum ad valorem under paragraph 5 of the Tariff Act of 1930. Other claims were made, one of which was under paragraph 1558, *supra*, but these other claims were not urged here. This court affirmed the judgment of the trial court, holding that the catalyst was properly assessed for duty as found by the collector. In that case the court stated:

It is unnecessary for us here to discuss at great length the various shades of meaning which might be attached to the words "articles" and "wares" as used in the different provisions of the Tariff Act of 1930 and in practically every tariff law enacted in the United States. It is obvious that the term "article" is broad enough in the nonenumerated paragraph to include any nonenumerated substance. Possibly, in other paragraphs the term "article" necessarily would be given a narrower meaning depending upon the context, scope, and purpose of the whole provision. The instant merchandise is in chief value of nickel. Nickel is one of the well-known and valuable base metals. The same paragraph contains reference to the precious metals as well as base metals, other than nickel. In other words, it is a paragraph covering metal articles or wares placed in the tariff schedule of "Metals and Manufactures of" metals, and we see no reason why the material at bar, being essentially a nickel article, should not find classification therein unless it is excluded by virtue of the so-called doctrine of susceptibility which we next propose to discuss.

The doctrine of susceptibility has not been made an issue in this case and is, therefore, not considered.

In the instant case it is clear to us that there is nothing in the context, scope or purpose of paragraph 397 by reason of which a narrow meaning should attach to the word "articles" as contended by appellant.

272

This court further stated, in the *Andrews* case, *supra*, that:

We do not believe that the framers of the catch-all metal paragraph, 397, here involved, contemplated a construction of the same which would deny classification therein of such a metallic article as is here involved. This conclusion is somewhat confirmed by a consideration of the fact that when the 1930 tariff act was being prepared, Congress had before it the Summary of Tariff Information, 1929, which, in Vol. 1 at page 908, in referring to articles that were included in the predecessor paragraph 399, Tariff Act of 1922 (which was identical, except as to rates of duty, with paragraph 397 at bar), included the following pertinent language:

* * * Others are products made from the various nonferrous metals and alloys, such as aluminum, copper, brass, bronze, lead, nickel, zinc, pewter, tin, and *other metals, compositions, and manufactures not elsewhere provided for.* * * *
[Italics ours.]

We are of opinion that the above quotation applies fully to the issue here. See also *United States* v. *Eimer & Amend* 28 C. C. P. A. (Customs) 10, C. A. D. 117.

Since we are of opinion that the word "articles" appearing in paragraph 397 is to be construed in its broader meaning, it is immaterial whether the involved merchandise has one or many uses, or what its utility for any purpose may be.

For the reasons stated herein, we conclude that the imported merchandise is dutiable at 45 per centum ad valorem under the Tariff Act of 1930. The judgment appealed from is, therefore, *affirmed.*